Singh v. Merrick Garland and that's for petitioner. We have Mr. Khadir. Am I pronouncing that right? Let's see. Petitioner's Council. Good afternoon, Your Honour. That's along with, sorry? No, who's Council's, who's Petitioner's Council? No, I see. I see. For some reason the IT people gave me a little tiny box with your screen. I don't know if we can reach Sam and we can get a plot out. We'll try. But you should go ahead and proceed. May I ask the court if, particularly Judge Collins, would you be all right if my mask was off, Your Honour? If it's all right with the court, yes. Please go ahead without your mask. We may be able to hear you better. Thank you, Your Honour. And the protocol is that you have been vaccinated. I have, Your Honour. Yes. And to all the judges, I would like to reserve about 90 seconds of rebuttal time if possible. So I'll aim for that. And good afternoon to all the judges. My name is Ibrahim Khadir. I represent Petitioner Tejinder Singh in this case with the firm Ryan Associates. May it please the court, the crux of our argument today is that the immigration judge did not weigh the evidence regarding the rebuttal of the presumption of a well-founded fear of future persecution in a reasonable way consistent with the regulations or the precedent of this court, including Singh v. Whitaker, which the court in particular asked us to address. The factual background in this case is that Mr. Singh is a Sikh man from India, a member of the hands of private actors, specifically members of the Congress Party in 2011 and 2013. Mr. Singh also suffered persecution at the hands of the government in December of 2013 when he was arrested from his home and detained by the police. Testimony was heard in this case in 2016. In June of 2017, the judge made a ruling finding that the petitioner had testified credibly and that he had suffered past persecution and that thus he was entitled to a presumption of a well-founded fear, but that the presumption had been successfully rebutted by the government by way of internal relocation. The Supreme Court in INSV Cardozo Fonseca emphasized that the maintenance of a well-founded fear is more of a subjective test than an objective one, and that a 10 percent chance of suffering future harm is sufficient for maintaining a fear that is well-founded. This court has cited that precedent in Singh v. Ilkert at 1506. We contend that a reasonable fact finder could not have found that the department was able to rebut on that standard, particularly with the record that was before the court. Section 208.13 subsection b of the regulations lays out the requirement that the department must show by a preponderance of the evidence that the applicant can safely relocate to another part of the country and that it would be reasonable under all of the circumstances. This court in Singh v. Musharraf at 1034 and later cited in Melkonian v. Ashcroft at 1070 stated that when persecution occurs at the hands of the government itself, as is partially the case for petitioner in this case, the presumption is that the threat to the applicant is nationwide because of the obvious reach of government entities, and we contend that the IJ did not properly account for this precedent in her. Doesn't it say that when it's the a group such as a national police force you would get a national presumption? Is there an equivalent presumption in a country as as large and populous as India that the local police force in in one area can project its power to every corner of the country? My understanding, your honor, the the case in which that language where that language comes from regarding a national police force, even in that case, which forgive I believe is Singh v. Musharraf, it was a it was the Punjab police that was actually the police force that was active in that particular case, and while the case does say such as a national police force, I don't believe that that constricts the definition of what is a government entity to a national police force, but it obviously can include a local police force as well, or at least at a similar standard. But as I understand the evidence in this case, it's not the Punjabi police that are persecuting, it's the members of the Congress party, and the Punjabi police are merely indifferent. I'm up here speaking to you. Forgive me, your honor. My understanding of the case, and I can cite to the record, is that I have in the admin record at page 140, 141, and 321, that this petitioner, Mr. Singh, was in fact persecuted partially at the hands of the government because they did unlawfully arrest him from his home in December of 2013, and that was included in the judge's analysis, and I'm happy to report that. The judge noted in this case that the police who arrested Mr. Singh never photographed him, took fingerprints, or made records of his identity documents as proof that there's little evidence that the police would have the capacity or interest in tracking respondent, in tracking the petitioner. But what was neglected by the judge in her analysis of the police and their ability and interest in tracking Mr. Singh is that he was arrested from his home, from his place of residence, without any precipitating incident. And again, I can recite to the record at another time if need be, this is very solid, persuasive, circumstantial evidence that the police are well aware of his identity, his particulars, and how to locate him, even if they did not gather that information at the station after his arrest. Can you address how you think Singh v. Whitaker applies to your client's case? Absolutely can, your honor. My understanding of Singh v. Whitaker is that it was a commentary to a degree on matter of MZMR that where it was noted that a specific area of the country has to be identified for relocation, and my understanding of Singh v. Whitaker is that court ruled that indeed it is okay, it is sufficient for the government to articulate a broad and general area for relocation, such as in Singh v. Whitaker, the government had indicated, quote unquote, outside of the Punjab as the area for relocation. And our contention is that even that very low bar for the identification of a relocation zone was not present in this case, because on page 32 and 33 of the admin record, I believe page 9 and 10 of the judge's decision, she merely identifies that Mr. Singh could relocate again, quote unquote, within India, not outside of XYZ locality, not within XYZ locality, but simply within India. The judge said that relocation, quote unquote, has been identified as safe versus relocation within XYZ city versus relocation outside of XYZ area, and did not even use broad sweeping language such as Clearly, what the judge is referring to is could leave the Punjab. And that's because, you know, in the very next few sentences down from where there's a reference to relocating within India, it's the respondents expressed reluctance to leave Punjab. So, I mean, in context, it's outside of Punjab, isn't it? I certainly understand that point, and I don't think that it would be, I think that by the precedence of this court, and the particularity that Singh V. Whitaker is asking, I don't think that the judge was clear enough about that, because at no point did the government identify a, in their analysis, they didn't really identify a location, to my understanding. And although the context does was not describing something, an argument that she was making, or that the government was making in that case. Let me let me ask you this, if I may, this is Judge Fletcher up in front of you. What relief are you asking for? Are you merely asking for a remand, so that the agency can look at the relocation question in light of Singh V. Whitaker? Or are you asking for holding that we simply disagree, and we're compelled to find that he can't relocate? What are you asking for? Our most favorable, what we asked for in the first instance, is that the court reversed this case as being counter to Singh V. Whitaker. But of course, I understand this case was, this case was heard prior to Singh V. Whitaker being decided by this court. And thus, it is a, in the alternative, we certainly do seek a remand, such that the identify a location for safety. Counsel, if we, if we were to remand for reassessment by the agency, in light of Singh V. Whitaker, should that remand be on an open record, so that your client and the US government can submit more evidence? Or should the remand be on the current record? Your Honor, I, I don't know that I don't have any authority that would state that we would have the sort of the legal right to ask for it to be an open record. I think that would be a question best left to the agency to determine how they would like to proceed on that. We believe that that the record as it is, is sufficient for the agency to make a, a reconsidered ruling on this case, but we would certainly not be opposed to an open record. Okay, thank you. Did you want to hold some time for rebuttal? I'll do that, Your Honor. Sure. I'll hold, I'll hold for rebuttal. Okay, so thank you. And we'll, well, for your planning purposes, we'll give you an extra minute so you can have two minutes of rebuttal time. I appreciate that, Your Honor. Turn to Mr. Shukart, representing the, the Department of Justice. And Mr. Shukart, although you're set for 10 minutes, if you also want an extra minute pandemic bonus, if you ask for it, you'll get it. Judge Fletcher, would you prefer I sit down here? Please, please sit right there. It's fine. Okay. Well, how about over there away from the court clerk? There you are. Okay, thank you. Mr. Shukart, please proceed. Thank you, Your Honor. And thank you for your generosity with your pandemic minutes. And good afternoon to you all. I'm Spencer Shukart for the Attorney General. May it please the court. The court, please add a minute to Mr. Shukart's argument. Thank you, sir. Now, Your Honors have asked in this case that it be examined in light of Singh B. Whitaker. So I'm going to refer to that case as Singh for clarity's sake. And I will refer to Mr. Singh as the petitioner. The lesson of Singh, as I understand it, is that the immigration judge, at least for this case, is that the immigration judge must conduct an individualized analysis of whether the government has met its burden to show that the petitioner could safely and reasonably relocate within his home country. Or in other words, the petitioner and the immigration judge have to be looking at the same landscape of facts. And the landscape is painted by the petitioner. That's what makes it an individualized analysis. And that's exactly what happened in this case. The petitioner was asked on three different occasions during his trial, once by his own counsel and twice by the immigration judge, to help the court understand why he couldn't relocate within India. And he gave two reasons. The first was based on his fear that his whereabouts would be revealed to the authorities in Punjab, who would then disseminate his information to the people who had harmed him before. And the theory of this is that he would have to show his ID when he tried to find a place to live under the tenant verification system. And to the local police, who would then share the information with the Punjab police, who would then act on the information themselves or share it with the Congress party or what have you. The second fear was that he feared losing the safety and numbers of people like him, quote unquote, meaning Sikhs in Punjab, which has the highest concentration of Sikhs in India. So that was the landscape painted by the petitioner. Tenant verification system, and it's just a general anti-Sikh sentiment. And that was exactly what the immigration judge addressed directly and thoroughly. As to his fear of the tenant verification system, she found that it was only sporadically and unreliably enforced. And that even if it wasn't, even if it were perfectly enforced, that there was no communication or no routine communication between local police forces. And because he wasn't known to the central authorities and he wasn't a identity, no never took his fingerprints, never photographed and never copied his ID. And even when he went into the police station to report attacks on himself by other people, they didn't take a report. So even if they were contacted, there would be nothing for them to share. And as to his fear of losing safety and numbers, the immigration judge found that there are large and numerous Sikh communities outside of Punjab, not as large as the one in Punjab, but still they exist. And that there are no barriers for Sikhs to freely move around India or to freely access jobs, education and health care. She also addressed all of the regulatory factors at 1208.13 and found that the DHS had met its burden to show that he couldn't safely and or that he could safely and reasonably relocate. That is a thoroughly individualized analysis of his ability to relocate. And for that reason, the PFR, the petition for review should be affirmed. To the extent... Counsel, could I interject a question? Of course, sir. On that precise point, when we have a case that's committed to a federal agency, your men, we have a new precedent from the circuit setting a new standard. Would it make more sense, notwithstanding the argument that this could be considered individualized, for us to remand so the agency can consider Singh v. Whitaker in the first instance? I think that might make more sense in the case of where the court is announcing a new rule or a new understanding of a rule. But it seems to me that Singh v. Whitaker is just a clarification or perhaps even a correction of what the agency had been doing. Because this, if you notice in Singh and in many of the cases that rely upon Singh, that follow Singh, the pattern of facts is very similar. This is not an uncommon occurrence, what happened to the petitioner here. And that's what is interesting. And I think perhaps what brought Singh v. Whitaker to this court's attention in this case is that the findings of fact are essentially identical. The tenant registration system, the low-level man party member, the fears of being revealed by having to go find someplace to live. But the difference here is that the landscape painted by the petitioner in Singh was different. He had, quote, a stated of Singh. That's not present in this case. Petitioner was very specific that his only fears were being revealed to the people who had hurt him in Punjab and being away from people like him and vulnerable to this anti-Sikh violence. And the IJ addressed those things. And for that reason, there's no reason that the court, I think, should contemplate remanding under Singh, because this case is consistent with Singh. There would be no reason for the IJ to contemplate his political, his future political activity when he hadn't given any. For her to do that would just be sort of hypothesizing facts that weren't in the record. That wouldn't be an individualized analysis. Let me look at it this way. To the extent that Singh v. Whitaker announces either a new rule or a correction to a practice or whatever, and that it might be relevant to the relocation, it's possible that Mr. Singh, in this case, did not understand that it was relevant to the relocation, whether he said or did not say that he intended to continue his in light of Singh v. Whitaker, he might view it as relevant. So any absence from the record of that may be correctable if we remand. What's your response to that? I would say that my understanding from what I remember, this is something of an ancient case, but I believe that the petitioner's brief was filed after Singh had issued. Certainly, our brief was filed after Singh had issued. And I don't believe I heard Mr. Qadir make that argument in his opening statement. So to the extent that that's a possibility, no one has raised it, Your Honor. I'm not sure how much detail it needs to be raised, because I'm not really talking about the brief. I'm talking about the record as it was made. Of course, the record was made pre-Singh. Sure. And I understand what you're saying. It's a fair enough point. But again, I think this case is consistent with Singh. It's consistent with the cases that followed it. I do want to take a moment, if I've answered your question, Your Honor. I want to take a moment to address the local versus national, the presumption of nationwide harm. In this case, again, because the petitioner's specific fear was that he would be discovered, you know, in his flight from Punjab, through this mechanism of local authorities communicating to a presumption of nationwide harm when the persecutor is in a central authority. The immigration judge's finding addresses that, because she talks about the unlikelihood of these entities speaking to one another. There would be no reason. He's not a criminal. He's not a central. He's not a high-level militant, quote unquote. He's not wanted for any reason. They, in fact, seem to have successfully chased him off, for lack of a better way of phrasing it. So there'd be no reason for them to communicate to go seeking him and no reason for the local authorities to wonder about whether they ought to contact people in Punjab about him. So that presumption, to the extent it exists in this case, was also found to have been rebutted impliedly. Counsel, if I could interject a question. Certainly. Under the Whitaker case, does the agency have to say specifically it would be safe for you to relocate in the state of X or the state of Y, you know, a particular region? No, Whitaker is less specific in that. It just says that the agency has to, the Department of Homeland Security has to propose either a general or specific areas somewhere in the country. And in Singh, I believe the area was the entirety of India outside of Punjab. And that's enough. And the IJ has to address the record as the DHS gives it. And that's what she did in this case. And since we're on that topic, the petitioner's argument there is, I would say, with respect, fairly disingenuous. Mr. Qadir himself at page 146 framed the question to the petitioner, why can't you relocate outside Punjab? And again, when the petitioner answers the immigration judge's question at page 177, he says, I can't relocate outside Punjab for these reasons. That is clearly the context in which the evidence was adduced and clearly the context in which the immigration judge made her finding about the this case is a good example of when facts fail in one case doesn't necessarily mean that they fail in another. Immigration judge here was very attentive to all of the things that the petitioner said. She individualized her analysis to exactly the things that he feared. And so this case compares favorably to Singh. And we respectfully request that you affirm it. If there are no other questions, I'll rest there. Okay, no questions here. And I don't see any from Judge Fletcher, Judge Council. Well, thank you, Mr. Shukart. Thank you, Your Honor. Go on with rebuttal time for Mr. Qadir. I'll begin, Judge, with the discussion of the individualized consideration within this case. And we would assert that the individualized consideration was not a reasonable analysis under not only precedent, but under the record in front of it. With respect to, again, citing to Singh B. Whitaker, there was an emphasis in Singh B. Whitaker that an individualized analysis referred to the possibility and the likelihood of an applicant's continued political activities in India. And in this particular, in Mr. Singh's case here, his statement read that I support the cause of Khalistan in the present tense. And this was not a, the concept of continued political activities was not addressed or considered in Petitioner's case. And we believe that that also brings it into conflict with Singh B. Whitaker. Additionally, the actual weighing of the evidence, I would, we would ask that the court find it to be not reasonable and that a reasonable fact finder could not have ruled the way the judge did on the evidence before her. On page six of the judge's decision, she summarized the evidence of basically comparing Exhibits 3 of the court record to Exhibits 8 of the court record. And what she summarized was that the, that the, this Petitioner's very clear on its conclusions about the tenant verification system. And when she described the evidence submitted by the department, it was, it was fairly equivocal on both the tenant verification system, its enforcement, as well as information sharing between the police. And because the burden of proof is what it is, once the presumption has been afforded, we believe that this was a unreasonable weighing of the evidence. And I'll stop there unless the judges have any questions. I'm hearing no case, no questions from my colleagues. I have none. The Tejinder Singh v. Garland case shall now be submitted. And the council will hear from the Petitioner and respond to further arguments today, which are much appreciated. So we'll go on to the last case to be argued.
judges: FLETCHER, GOULD, COLLINS